COLUMBUS & GREENVILLE RY. CO. *v.* MISSISSIPPI CLINIC.*

(Division B. Feb. 4, 1929.)

[120 So. 203. No. 27589.]

30

*Corpus Juris-Cyc References: Agency, 2CJ, section 692, p. 935, n. 27; p. 938, n. 31; Railroads, 33Cyc, p. 67, n. 3; As to authority of agent or other representative of railroad company to employ medical service for injured person, see annotation in 20 L. R. A. 695; 16 L. R. A. (N. S.) 1081; 21 R. C. L. 873; 3 R. C. L. Supp. 1199; 5 R. C. L. Supp. 1176; 6 R. C. L. Supp. 1292.

*Gardner, Odom & Gardner* and *Alfred Stoner,* for appellant.

32

*Kimbrough, Tyson & Kimbrough,* for appellee.

ANDERSON, J. Appellee, a partnership of physicians, brought two separate actions in the court of a justice of the peace of Leflore county against appellant, one of which was to recover of appellant the sum of fifty dollars for surgical and medical services rendered one Mike Buford by appellee at the alleged request of appellant, and the other for one hundred fifty dollars for surgical and medical services rendered Julius Steen by appellee at the alleged request of appellant; both Steen and Buford having been injured in a collision between an automobile in which they were driving and one of appellant's passenger trains. The cases were tried by the justice of the peace and judgments rendered in appellee's favor for the amounts sued for. From those judgments appellant appealed to the circuit court of Leflore county. After the cases reached the circuit court, they were, by order of that court, consolidated and tried as one case; the parties being the same and the evidence in each being substantially the same on the question of whether there was liability on the part of appellant for the amounts sued for. There was a trial in the circuit court resulting

in a directed verdict and judgment for appellee. From that judgment appellant prosecutes this appeal.

W. B. Pentecost, Julius Steen, and Mike Buford together in an automobile attempted to cross appellant's railroad track near the city of Greenwood. One of appellant's passenger trains struck the automobile while attempting to cross the track, resulting in the death of Pentecost and the serious injury of both Steen and Buford. Thereupon, appellant's passenger train stopped, took Steen and Buford aboard, and carried them to Greenwood, where they were met at appellant's depot by Dr. R. B. Yates, one of the partners in appellee, who, appellee claims, at the request of T. M. Curry, appellant's claim agent, took Steen and Buford to the Kings Daughters Hospital in Greenwood for surgical and medical treatment, where they were treated by Dr. Yates for some weeks thereafter.

Appellee sought to hold appellant liable for the surgical and medical services rendered by it to Buford and Steen, upon the ground that the services arose out of such an emergency that it became the duty of appellant, which duty it assumed, of procuring and paying for the necessary surgical and medical attention for Buford and Steen. Appellee demanded of appellant the sum of one hundred fifty dollars for surgical and medical services to Steen, and fifty dollars for like services to Buford, which appellant refused to pay. Thereupon, appellee embodied its claim for the services in two accounts, one for one hundred fifty dollars for the services to Steen, and the other for fifty dollars for the services to Buford. Both of the accounts were sworn to and were the basis of the two separate actions brought in the court of the justice of the peace, which actions were consolidated, as stated, when the cases reached the circuit court. The Steen account set out the items of appellee's services as follows:

"To Professional services rendered Julius Steen (Dr. Yates) including setting of fractured left thigh at Kings Daughters Hospital, Greenwood, Mississippi, and after attention, one hundred fifty dollars."

In the Buford account they are set out in this manner:

10/29/25

Attending Mike Buford at Columbus & Greenville R. R. Station, accompanying him to Kings Daughters Hospital, and suturing and dressing wounds (Dr. Yates) .........................$25.00

10/29 to 11/2

Calls, attending Mike Buford at hospital (Dr. Yates) ....................................... 24.00

11/2/25

Removal of stitches at hospital ............... 1.00
_____

Total ....................................$50.00

It will be noted that one item of the Buford account is "calls, attending Mike Buford at hospital (Dr. Yates), $24." And that the Steen account contains only one item of one hundred fifty dollars for setting Steen's thigh and "after attention." Dr. Yates testified on behalf of appellee and was the only witness who testified in the case. He testified that he set Steen's thigh and visited him twice daily in the hospital for six weeks, and the usual charge for such visits was three dollars each; and that he sutured one or more of Buford's wounds and visited him twice daily in the hospital for two or three weeks. Dr. Yates' evidence, fairly interpreted, meant that the one hundred fifty dollars charge for services rendered Steen included not only the setting of his thigh, but his visits to Steen which continued thereafter for six weeks. And that the item in the Buford account of twenty-four dollars for attending him at the hospital covered a period of time of several days.

Appellant objected to Dr. Yates' evidence to establish the accounts upon the ground that they were not itemized as required by section 734, Code 1906, Hemingway's Code of 1927, section 531. Appellant's objection was overruled by the court, to which action of the court appellant excepted. That ruling of the court is the ground of one of appellant's assignments of error. Section 734, Code of 1906, Hemingway's Code of 1927, section 531, is in this language:

"There shall be annexed to or filed with the declaration in every case founded on an open account, a copy of the account or bill of particulars of the demand; and in actions founded on any writing, a copy of such writing, with the names of subscribing witnesses, if any, shall be annexed to or filed with the declaration; and evidence thereof shall not be given on the trial unless so annexed or filed; and the same shall constitute a part of the record of the cause."

Under the statute appellant was entitled to a bill of particulars of appellee's demand, in order that appellant might intelligently make defense thereto. Anything less than an itemized account setting out each visit made by Dr. Yates and the charge therefor would not be a bill of particulars. When the statute is not complied with in that respect, by its express language no evidence is admissible to establish the account. *Finck & Co.* v. *Brewer*, 133 Miss. 9, 96 So. 402; *Wolff* v. *Hopkins*, 145 Miss. 827, 111 So. 290. It follows that the court erred in admitting the testimony of Dr. Yates in the absence of such an itemized account.

The court permitted Dr. Yates, for the purpose of establishing the fact that T. M. Curry, who requested appellee to take charge of and administer to Steen and Buford, was the claim agent of appellant, to testify, over the objection of appellant, that Curry told the witness that he (Curry) was the claim agent of appellant. In so

holding the court erred. Neither agency nor the scope thereof can be proven by the declaration of the alleged agent. *Walters* v. *Stonewall Cotton Mills,* 136 Miss. 361, 101 So. 495. It is unnecessary to determine whether there was sufficient other evidence to establish Curry's agency for appellant in view of the fact that the judgment must be reversed.

The court refused appellant's request for a directed verdict in its favor, which appellant contends it was entitled to upon two grounds: First, that there was no legal evidence of the absence of a bill of particulars; second, because taking the facts to be true which appellee's evidence tended to show, a case of emergency had not arisen which, under the law, made it the duty of appellant to become responsible for the surgical and medical attention rendered Buford and Steen by appellee. We have already disposed of the first ground. 1 Elliott on Railroads, section 260, p. 411 *et seq.,* states the principles of law governing the second proposition as follows: "It may be affirmed that the employment of a physician or surgeon is not ordinarily within the scope of the authority of a subordinate agent or employee, but that there may be extraordinary cases giving authority to employ a surgeon or physician. Neither a road master, section agent, yardmaster, nor station master, will be presumed to have authority to employ a physician to attend a servant of the company injured in the line of his duties. So, also, it is held that there is nothing in the duties of the company's solicitor, or surgeon, or engineer, or conductor, from which such authority can be presumed. But an emergency calling for immediate action, in order to save life, or prevent suffering may be sufficient to confer authority upon the subordinate to employ necessary surgical aid, if he is the *highest representative* of the company on the ground. There may be cases of immediate urgency when it will be within the

scope of the agent's employment to render those imperative services which the dictates of justice and humanity hold to be due from an employer to a servant injured while engaged in his service, and not only this, but in cases of urgent emergency it may become his duty to take such measures as will prevent needless suffering and loss of life. And even though the agent had no authority to engage a physician, such an employment may be ratified, and it is held that a physician employed by the conductor of a train to care for a man injured by the train can recover against the railroad company for his services, if after knowledge of his employment by the conductor, the company failed to notify him that it would not be responsible. The authority of such a subordinate agent, however, arises only with the emergency which makes it necessary for him to possess it, and ends with such emergency."

The courts have not confined these principles alone to injured employees; they have been extended to passengers and others not in the employment of the railroad company. 21 R. C. L. 414, 415, par. 56; *Bonnette* v. *St. Louis, I. M. & S. R. Co.,* 87 Ark. 197, 112 S. W. 220, 16 L. R. A. (N. S.) 1081, 128 Am. St. Rep. 30; *Southern Ry. Co.* v. *Humphries,* 79 Miss. 761, 31 So. 440, involved the question of the liability of the railroad company for professional services of a physician to an injured servant of the railroad company needing immediate surgical attention. But the liability of a railroad company does not go beyond the emergency, the services of the physician are to be extended for a sufficient time for the physician employed to communicate with the railroad company, and, if the railroad company declined to be responsible beyond the emergency service, have time to give notice to the proper poor authorities if the injured person be entitled to public care. If the physician desires to hold the railroad company responsible for such services, he

must make a special contract with the company covering them. *Salter* v. *Nebraska Telephone Co.*, 79 Neb. 373, 112 N. W. 600, 13 L. R. A. (N. S.) 545. Under these principles, in attending upon Steen for six weeks after his injury and Buford a shorter time, but for several days, appellee was not performing emergency services, and therefore appellant was not bound to pay appellee for such services, unless appellee had a contract with appellant, either expressed or implied, covering such services.

*Reversed and remanded.*